**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | |
|---|---|
| **ANGELA M HALL,** | ] |
| | ] |
| **Plaintiff,** | ] |
| | ] |
| **v.** | ]     **CV-09-BE-0647-S** |
| | ] |
| **I.C. SYSTEM, INC.,** | ] |
| | ] |
| **Defendant.** | ] |
| | ] |

**MEMORANDUM OPINION**

This case comes before the court on "Defendant I.C. System, Inc.'s Motion for Summary

Judgment" (doc. 14).  The parties have fully briefed the motion.  Plaintiff Angela Hall asserts

that the Defendant violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et. seq.*

("FDCPA"), and invaded her personal and financial privacy while trying to collect a consumer

debt from her.  Defendant I.C. System, Inc. ("ICS") asserts that there are no genuine issues of

material fact as to Ms. Hall's claims against ICS and that it is entitled to judgment as a matter of

law.  For the reasons stated below, the Defendant's motion for summary judgment (doc. 14) will

be denied.  A separate order to that effect will be entered simultaneously.

**Facts**

The following facts are viewed in the light most favorable to the non-moving party,

*Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1282 (11th Cir. 1999), and are the facts

only for summary judgment purposes.

Plaintiff Angela Hall filed suit against Defendant ICS on March 31, 2009.  The suit

pertains to ICS's alleged collection activities to collect a credit card debt owed by Ms. Hall to Target National Bank.  ICS is a debt collection agency whose principle place of business is in Minnesota.   Ms. Hall does not dispute that she owes the Target debt.  In the summer of 2008, Ms. Hall fell behind on her credit card payment to Target after she lost her job.

Ms. Hall provided her home telephone number, (XXX) XXX-5245, to Target as her contact number.  Ms. Hall had caller I.D. at her residence. She resides in Bessemer, Alabama with her parents and has lived there since 1996.  Ms. Hall did not have another contact number and her number has been the same at all times relevant to this litigation.  Target placed Ms. Hall's debt with ICS for collection on October 16, 2008.  ICS first attempted to contact Ms. Hall regarding her Target debt that same day but did not reach her.  ICS last attempted to collect the debt on April 6, 2009.  A number of other creditors and collection agencies contacted Ms. Hall at her residence during the relevant time period.

ICS first successfully contacted Ms. Hall on October 31, 2008 regarding the Target debt. During that conversation, Ms. Hall informed the ICS collector that she had lost her job and that she could only pay $10 a month towards her $5,900 debt; ICS rejected Ms. Hall's offer. Throughout the month of November and into December, ICS collectors continued to call Ms. Hall at least every five days in an attempt to collect the debt.  Ms. Hall's situation had not changed and she continued to inform the ICS collectors that she still could not pay the debt.  On December 8, 2008, ICS contacted Ms. Hall and she informed the collector that she had a job interview that day and had no way to pay.

In December 2008, Ms. Hall began working at St. Vincent's Hospital.  She worked Monday through Friday from 7:00 a.m. to 3:30 p.m.  When ICS called on December 16, 2008,

Ms. Hall told the collector that she had found a job, but would not be getting a pay check until January; she requested that the ICS collectors not call her until then.  Despite this request, ICS called Ms. Hall on December 21st, 22nd, 23rd, on Christmas Eve, twice on the 26th, three times on the 27th, on the 28th, 29th, three more times on the 30th, five times on New Year's Eve, twice on New Year's Day, and four times on January 2, 2009.

ICS finally quit calling on January 2, 2009 when Ms. Hall contacted ICS and agreed to make a payment arrangement for her Target debt.  Ms. Hall spoke with ICS collector Nancy Britton.  Ms. Britton is a debt collector with ICS and has held this position since September 2007.  Ms. Hall agreed to make a payment of $173.00 that ICS would withdraw from her checking account and post against her Target debt on January 14, 2009.  While speaking with Ms. Britton, Ms. Hall set up the payment with the understanding that ICS would "roll back" the account to Target and the calls from ICS would stop.  Ms. Britton instructed Ms. Hall to set up a hardship plan directly with Target and to make future payments to Target.  Ms. Hall does not recall receiving any further instructions.  Ms. Hall did not know exactly when ICS would roll back the account and she was not aware that the account would only roll back after ICS processed the payment.

After she made the payment arrangement with ICS, Ms. Hall contacted Target to set up the hardship plan.  When Ms. Hall called Target, the Target representative said that they could not do anything until the account rolled back to Target.  As a result, Ms. Hall was unable to set up a hardship plan with Target and the calls from ICS resumed.

Ms. Hall asserts that after January, the calls from ICS became worse; most days, ICS would call up to four times a day.  Because Ms. Hall worked during the day, she was not home

for a majority of the calls placed to her residence; however, when she came home from work, she would review the caller I.D. to see who called her residence.  In summary, ICS made thirteen calls in November, twenty-four calls in December (twelve during the last four days of the month), twenty-three calls in January, thirty-eight calls in February and thirty-five calls in March.

Additionally, Ms. Hall's call logs reflect that ICS employees called Ms. Hall's residence and spoke with her parents on numerous occasions, disclosed the debt, asked for assistance in getting Ms. Hall to pay the debt and continued to call after Ms. Hall's parents asked them to stop. On one occasion, ICS ask Ms. Hall's mother why she could not get Ms. Hall to pay her bills. When Ms. Hall's father told the ICS collector not to call the residence, the collector replied, "I will continue to call til you get Angie to pay her bill."  Ms. Hall's parents spoke with ICS's collectors almost every day.  Mr. Bearden would tell the collector what time Ms. Hall got off work, but the collectors would call back before that time.  The calls and discussions ICS collectors had with Ms. Hall's parents were embarrassing and demeaning to Ms. Hall.

### Standard of Review

Summary judgment is an integral part of the Federal Rules of Civil Procedure.  Summary judgment allows a trial court to decide cases when no genuine issues of material fact are present and the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56.  When a district court reviews a motion for summary judgment it must determine two things: (1) whether any genuine issues of material fact exist; *and if not*, (2) whether the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to

4

interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56).  The moving party can meet this burden by offering evidence showing no dispute of material fact or by showing that the non-moving party's evidence fails to prove an essential element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23.  Rule 56, however, does not require "that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim." *Id.*

Once the moving party meets its burden of showing the district court that no genuine issues of material fact exist, the burden then shifts to the non-moving party "to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). Disagreement between the parties is not significant unless the disagreement presents a "genuine issue of material fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).   In responding to a motion for summary judgment, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material fact."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  The non-moving party must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a *genuine issue for trial*.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)) (emphasis added); *see also* Advisory Committee Note to 1963 Amendment of Fed. R. Civ. P. 56(e), 28 U.S.C. app. ("The very mission of summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.").  The non-moving party need not present evidence in a form admissible

5

at trial; however, he may not merely rest on the pleadings. *Celotex*, 477 U.S. at 324. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

In reviewing the evidence submitted, the court must "view the evidence presented through the prism of the substantive evidentiary burden" to determine whether the nonmoving party presented sufficient evidence on which a jury could reasonably find for the nonmoving party. *Anderson*, 477 U.S. at 254; *Cottle v. Storer Commc'n, Inc.*, 849 F.2d 570, 575 (11th Cir. 1988). The court must refrain from weighing the evidence and making credibility determinations, because these decisions fall within the province of the jury. *See Anderson*, 477 U.S. at 255; *Stewart v. Booker T. Washington Ins. Co.*, 232 F.3d 844, 848 (11th Cir. 2000); *Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1282 (11th Cir. 1999). Furthermore, all evidence and inferences drawn from the underlying facts must be viewed in the light most favorable to the non-moving party. *Graham*, 193 F.3d at 1282. The non-moving party "need not be given the benefit of every inference but only of every reasonable inference." *Id.* The evidence of the non-moving party "is to be believed and all justifiable inferences are to be drawn in [its] favor." *Anderson*, 477 U.S. at 255. After both parties have addressed the motion for summary judgment, the court must grant the motion *if* no genuine issues of material fact exist *and if* the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56.

### Discussion

Ms. Hall asserts that ICS repeatedly violated the FDCPA while attempting to collect a debt she owed on a Target credit card. She also asserts an invasion of privacy claim because of ICS's alleged intrusion upon her seclusion and revelation of her private financial matters to her

parents.  Finally, Ms. Hall asserts a claim against ICS for negligent and wanton hiring and

supervision of the debt collectors it employed.  ICS contends that the court should grant summary

judgment in its favor on Ms. Hall's claims.  However, because genuine issues of material fact

exist, summary judgment is not appropriate.

I.     Violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et. seq.

In her complaint, Ms. Hall alleges that ICS repeatedly violated the FDCPA.  Specifically,

she alleges that ICS:  1) called her home in a calculated, malicious and effective campaign of

harassment; 2) told her parents about her debt; and 3) deceived her into believing that if she paid

$173, the account would roll back to Target and she would not receive anymore calls from ICS.[1]

As discussed below, Plaintiff has presented evidence of genuine issues of material fact as to each

alleged violation of the FDCPA.  Therefore, ICS is not entitled to judgment as a matter of law

and its motion for summary judgment is due to be denied.

A.  The FDCPA prohibits a debt collector from "[c]ausing a telephone to ring or engaging

any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or

harass any person at the called number."  15 U.S.C. § 1692d(5).  Plaintiff and Defendant dispute

the number of calls ICS made to Ms. Hall's home during the relevant time period.  Taking Ms.

Hall's version of facts as true, which the court must do at the summary judgment stage, ICS

called Ms. Hall thirteen times in November, twenty-four times in December (twelve during the

---

[1]In her response to the motion for summary judgment, Ms. Hall also alleges that ICS called at times which ICS should have known to be inconvenient in violation of 15 U.S.C. § 1692c(a)(1); however, this claim is not properly before the court because Ms. Hall's complaint is devoid of any claim pursuant to 1692c(a)(1). *See Gilmour v. Gates, McDonald and Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) ("A plaintiff may not amend her complaint through argument in a brief opposing summary judgment.").

last four days of the month), twenty-three times in January, thirty-eight times in February and thirty-five times in March.  Ms. Hall has also produced evidence that ICS collectors not only called, but also harassed and annoyed her and her parents.

Neither Plaintiff nor Defendant submitted any binding authority on the question of whether, for summary judgment purposes, evidence of 133 calls over a four-month period can constitute repeated calling with the intent to annoy, abuse or harass in violation of the FDCPA. Nevertheless, the court finds that the reasonableness of the volume and content of the calls is a question that a jury, rather than this court, must answer.  Therefore, the court will deny Defendant's motion for summary judgment on Plaintiff's § 1692d(5) claim.

B.  Ms. Hall also alleges that ICS communicated with third parties regarding the collection of Ms. Hall's debt in violation of the FDCPA. *See* 15 U.S.C. § 1692c(b).  Ms. Hall and ICS dispute whether any ICS employee communicated with Ms. Hall's parents regarding her debt.  Because a genuine issue of material fact exists regarding ICS's communication with Ms. Hall's parents about her debt, the court must deny the motion as to the § 1692c(b) claim.

C.  Finally, Ms. Hall asserts that ICS deceived her while attempting to collect her debt. Using a false representation or deceptive means to collect or attempt to collect a debt also violates the FDCPA. *See* 15 U.S.C.A. § 1692e(10).  Ms. Hall alleges that ICS deceived her when Ms. Britton instructed her that after she paid the $173, the account would "roll back" to Target. When Ms. Hall contacted Target after making the payment, the account had not rolled back. Thus, she contends that ICS used deceptive means to collect the $173.

ICS contends that Ms. Britton instructed Ms. Hall to call Target to set up the hardship plan *after the payment posted*.  On the other hand, Ms. Hall does not recall any instructions other

8

than the instruction that if she paid the $173, her account would roll back and she could set up a hardship plan with Target.  ICS asserts that because Ms. Hall does not remember any additional instructions, she does not *deny* the assertion that Ms. Britton instructed her to contact Target after the payment posted.  Because the parties disagree, a genuine issue of material fact exists as to what instructions Ms. Britton actually gave Ms. Hall.  A jury, rather than this court, must determine which version of facts is accurate.

Further, at the summary judgment stage, the court must view the facts in a light most favorable to Ms. Hall and draw all reasonable inferences from the facts in favor of Ms. Hall; therefore, the court cannot reach the conclusion that ICS urges.  Instead, the court must determine whether a reasonable jury could find that ICS used deceptive means to collect a debt based on the facts and reasonable inferences evaluated in the light most favorable to Ms. Hall.  An alternative reasonable inference the court could draw is that because Ms. Hall does not remember any additional instructions, Ms. Britton did not give additional instructions and instead told Ms. Hall that a $173 payment would cause the account to roll back to Target.  Because, in fact, Ms. Hall's account did not roll back to Target, a reasonable jury could conclude that ICS tricked Ms. Hall into making the payment.  As such, ICS is not entitled to judgment as a matter of law on this claim.

II.     Invasion of Privacy

The Alabama Supreme Court has recognized a state law cause of action for invasion of privacy in the context of the debt collection process. *Jacksonville State Bank v. Barnwell*, 481 So. 2d 863, 865 (Ala. 1985).  While a creditor may take *reasonable* action to pursue a debtor and collect a debt, Alabama law prohibits "the wrongful intrusion into one's private activities in such

a manner as to outrage or cause mental suffering, shame or humiliation to a person of ordinary sensibilities." *Id.*  A debtor may recover for injuries suffered only "[w]here the creditor takes actions which exceed the bounds of reasonableness." *Id.*

In this case, Ms. Hall has presented evidence that ICS repeatedly called her home–even when it knew or should have know she was at work–to harass her and her family.  Ms. Hall has also submitted evidence that ICS collectors told her parents about her debt without her permission.  Accordingly, Ms. Hall has raised genuine issues of fact regarding whether the actions of ICS constituted a campaign of harassment that went beyond the bounds of reasonableness, giving rise to liability for invasion of privacy.  Therefore, ICS's motion for summary judgment on the invasion of privacy claim is due to be denied.

III.    Negligent and Wanton Supervision/Training

A.  Negligent Supervision/Training

To establish a claim against an employer for negligent hiring and supervision, a plaintiff must show that an employee's incompetency was actually known to the employer or that, had the employer exercised due diligence, it would have learned of the incompetence. *Voyager Ins. Cos. v. Whitson*, 867 So. 2d 1065, 1073 (Ala. 2003).  Additionally, a plaintiff must "prove the underlying wrongful conduct of [the] employee[]." *Id.*  Addressing the last element first, Ms. Hall has defeated ICS's motion for summary judgment on her invasion of privacy claim; therefore, she has established, for summary judgment purposes, the wrongful conduct of the ICS collectors.

As to whether ICS knew or should have known of its collector's alleged torts, Defendant has presented evidence that it keeps records of calls collectors make to consumers.  The records

also contain notes from its collectors detailing the content of the conversations with debtors.  The

court finds that because ICS had a record-keeping system that monitored the phone calls of its

collectors, it knew and/or should have known of their calling practices.  As such, Defendant ICS

knew or should have known of its employees' alleged incompetency.  Thus, ICS is not entitled to

summary judgment on Ms. Hall's negligent supervision claim.

B.  Wanton Supervision/Training

The Alabama Supreme Court has defined wanton conduct as:

[the] doing of some act or something with reckless indifference to the
consequences of said act, or . . . a failure or omission to do something, with
reckless indifference to the consequences of such failure or omission, that is, that
the party acting or failing to act is conscious of his conduct, and even though
without any actual intent to injure is aware from his knowledge of existing
circumstances and conditions that his conduct would probably result in injury to
another.

*Southland Bank v. A & A Drywall Supply Co.*, 21 So. 3d 1196, 1218 (Ala. 2008).  Both parties'

submissions on the issue of whether a reasonable jury could find that ICS's conduct constituted

wanton supervision/training leave much to be desired.  However, the burden to show that no

genuine issue of material fact exists and that it is entitled to judgment as a matter of law rests on

Defendant ICS.

Here, the record shows that ICS had a system in place to monitor the calls its collectors

made.  Thus, ICS had actual knowledge of the number and content of the completed calls.

Although the parties disagree on whether ICS's employee's invaded Ms. Hall's privacy, this

dispute must be resolved in favor of Ms. Hall.  Viewing the evidence in the light most favorable

to Ms. Hall, the record shows that ICS, a sophisticated debt-collection company, 1) knew of the

numerous telephone calls that its collectors made to Ms. Hall's residence; and 2) knew or

11

recklessly disregarded the fact that numerous telephone calls might cause emotional injury to Ms.

Hall.  Thus, the court cannot, as a matter of law, determine that Ms. Hall's claim of wanton

supervision should be dismissed.

## CONCLUSION

For the reasons stated above, the court denies Defendant's motion for summary judgment.

The court will simultaneously enter an order to that effect.


DONE and ORDERED this 8th day of June, 2010.

KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE

12